# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JEFFREY PURL, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:24-cv-1075 |
| | § | Judge Mazzant |
| CAREMARK, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Caremark, LLC's Motion to Compel Arbitration and Stay Proceedings and Brief in Support (the "Motion") (Dkt. #5). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

Plaintiff Jeffrey Purl ("Plaintiff") was an employee of Defendant Caremark, LLC ("Defendant") from July 18, 2011, to April 30, 2022 (Dkt. #1 at ¶¶ 6, 12, 19). On December 5, 2024, Plaintiff initiated this suit against Defendant alleging religious discrimination claims under Title VII of the Civil Rights Act as codified in 42 U.S.C. § 2000e, et seq. (Dkt. #1 at ¶ 1). On March 5, 2025, in lieu of filing an answer, Defendant filed the instant Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4 and 6 (the "FAA"), and Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that each of Plaintiff's claims are subject to a valid, enforceable arbitration agreement (Dkt. #5). On March 26, 2025, Plaintiff filed his Response to Defendant's Motion (Dkt. #9). On April 8, 2025, Defendant filed its Reply in support of its Motion (Dkt. #10). The Motion is ripe for adjudication.

Relevant to the purported arbitration agreement, Defendant alleges facts not found in Plaintiff's complaint. In support of Defendant's allegations, Defendant attaches to its Motion the sworn declaration of Robert Bailey (the "Bailey Declaration"), CVS Pharmacy, Inc.'s Executive Director of Enterprise Training (Dkt. #5-1 at pp. 4–10).

Beginning in October of 2014, Defendant introduced an Arbitration of Workplace Legal Disputes policy (the "Arbitration Policy") to all employees, or colleagues (Dkt. #5 at p. 8). The Arbitration Policy states, in relevant part:

> Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy.
>
> Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.
>
> Covered Claims include but are not limited to disputes regarding . . . discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

(Dkt. # 5-1 at pp. 12–13).

To implement the Arbitration Policy, Defendant required its employees to complete a training course titled, "Arbitration of Workplace Legal Disputes" (the "Arbitration Training") (Dkt. #5 at p. 9; Dkt. #9 at p. 4). Employees could access the Arbitration Training by logging in to Defendant's Learning Management System, LEARNet, using a unique log-in credential and a personalized password (Dkt. #5 at p. 9). Through the Training Course, employees could

2

electronically access the Arbitration Policy and the CVS Health Colleague Guide to Arbitration, (the "Training Guide"), or print them at no cost (Dkt. #5 at p. 9; Dkt. #5-1 at p. 19). The Arbitration Training and Training Guide outlined how employees could accept or decline the Arbitration Policy; namely, employees accepted by continuing their employment with Defendant after receiving notice of the Arbitration Policy and failing to opt out of the Arbitration Policy within thirty days of receipt of same (Dkt. #5 at p. 10; Dkt. #5-1 at p. 45). If an employee opted out of the Arbitration Policy, they would not be obligated to go to arbitration for a Covered Claim (Dkt. #5-1 at p. 45).

To complete the training, employees were required to electronically sign an acknowledgement page, signifying they agreed to the following terms presented in a bullet list:

> I am acknowledging and agreeing:
>
> that I have carefully read the [Arbitration Policy] and understand that it applies to me;
>
> that I have the opportunity, for a limited time only, to opt out of the [Arbitration] Policy and, by doing so, not be bound by its terms;
>
> that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this [Arbitration] Policy to CVS Caremark, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this [Arbitration] Policy;
>
> that by being covered by the [Arbitration] Policy and not opting out, I and [Defendant] are obligated to go to arbitration instead of court to resolve legal claims covered by the policy;
>
> that this electronic communication satisfies any requirement that such communication be in writing; and
>
> that my click of the 'yes' button creates an electronic signature that is legally binding.

(Dkt. #5 at pp. 10–11; Dkt. #5-1 at p. 35).

On October 6, 2014, Plaintiff completed the Arbitration Training (Dkt. #5 at p. 11; Dkt. #5-1 at p. 54). Plaintiff did not opt out of the Arbitration Policy in the requisite time frame, and Plaintiff continued his employment with Defendant until his termination on April 30, 2022 (Dkt. #5 at p. 11; Dkt. #1 at ¶ 19).

In the instant Motion, Defendant argues Plaintiff's claims are not properly before the Court pursuant to the FAA, 9 U.S.C. §§ 3–4 and 6, and Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6)[2].

## LEGAL STANDARD

Under the FAA, "parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citation modified). Thus, the FAA establishes "'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Because arbitration is a creature of contract, the FAA "requires courts to enforce agreements to

---

[1] A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).

[2] A Rule 12(b)(6) motion to dismiss allows a party to challenge the sufficiency of a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

4

arbitrate according to their terms." *CompuCredit Corp.*, 565 U.S. at 98 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478 (citing *Byrd*, 470 U.S. at 219). Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 584 U.S. 1031 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "'apply ordinary state-law principles that govern the formation of contracts.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)).

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question is usually for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 201–02.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). As the Supreme Court has stated: "'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582–83). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

Defendant moves to compel arbitration in this case based on the Arbitration Policy it instituted in October 2014 (Dkt. #5). Plaintiff argues there are certain legal restraints that render the Arbitration Policy unenforceable (Dkt. #9). The Court considers all arguments.

The Court begins with the two-step framework: whether the parties agreed to arbitrate some set of claims and whether the dispute between the parties falls within those claims. *Kubala*, 830 F.3d at 201–02. Here, Plaintiff does not challenge the scope of the Arbitration Policy, focusing the entirety of his opposition on whether there is in fact a valid agreement to arbitrate between the parties (Dkt. #9). As such, Defendant carries the burden of proving, under Texas law, the existence of an arbitration agreement by a preponderance of the evidence. *Grant*, 469 F. App'x at 315; *Webb*, 89 F.3d at 258.

Again, the first question for the Court is whether there is "any arbitration agreement at all." *Kubala*, 830 F.3d at 201. Under Texas law, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dall. Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006). "When determining whether an employee received notice of a binding arbitration agreement, our cases do not confine that 'notice analysis' to the underlying agreement, but to all communications between the employer and employee." *Id.* (quoting *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002)). "Notice is effective if it unequivocally communicates to the employee definite changes in the employment terms." *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 781 (Tex. 2006) (per curiam) (citing *In re Halliburton Co.*, 80 S.W.3d at 568). As for acceptance, "[a]n at-will employee who receives notice of an employer's arbitration policy and continues

7

working with knowledge of the policy accepts the terms as a matter of law." *In re Dall. Peterbilt, Ltd.,* 196 S.W.3d at 163.

Here, Defendant provided Plaintiff with the Arbitration Policy, the Arbitration Training course, and the Arbitration Guide (Dkt. #5 at pp. 9–10). Through this communication, Defendant outlined the way Plaintiff could accept or opt out of the Arbitration Policy; namely, Plaintiff could accept by continuing his employment with Defendant and by failing to opt out within thirty days receipt of same (Dkt. #5 at p. 10; Dkt. #5-1 at p. 45). As highlighted by Defendant in its Motion, other courts have previously held an employee completing this type of training, an employee's failure to opt out of the relevant policy, and an employee's decision to continue their employment was sufficient to establish the employee received notice of the employer's arbitration policy and accepted it (Dkt. #10 at p. 5 ("*Loc Le v. CVS Rx Servs., Inc.*, No. 3:23-CV-0122-B, 2023 U.S. Dist. LEXIS 42368, at *2-3 (N.D. Tex. March 14, 2023) (finding that a valid arbitration agreement existed where the plaintiff reviewed the arbitration policy through the same training course at issue here); *Jones v. Caremark*, No. 5:16-CV-1297-DAE, 2017 U.S. Dist. LEXIS 223923, at *10, 12 (W.D. Tex. May 18, 2017) (same); *see also Leach v. H.E.B.*, No. SA-23-CV-01426-OLG, 2024 U.S. Dist. LEXIS 6573, at *8-9 (W.D. Tex. Jan. 12, 2024) (finding that the plaintiff manifested assent to the terms of the arbitration agreement when she completed training and continued her employment); *Hawkins v. UHS of Texoma, Inc.*, No. 4:21-CV-00265-SDJ-CAN, 2021 U.S. Dist. LEXIS 165606, at *14 (E.D. Tex. July 26, 2021), *adopted by*, 2021 U.S. Dist. LEXIS 165045 (E.D. Tex. Aug. 31, 2021) (upholding an arbitration agreement presented to plaintiff through an online training course)").

Plaintiff does not contest he completed the Arbitration Training on October 6, 2014, continued his employment through April 30, 2023, and failed to opt out of the Arbitration Policy

within the 30-day deadline (Dkt. #1 at ¶ 19; Dkt. #9 at p. 4). Thus, the Court finds Plaintiff agreed to arbitrate his religious discrimination claims.

The Court will, however, address the following summarized arguments Plaintiff asserts that are unrelated to whether he received proper notice: (1) the Arbitration Policy violates the Federal Trade Commission's ("FTC") "negative option rule" (Dkt. #9 at pp. 4–6, 8–9); (2) the Arbitration Policy violated Texas law for electronic signatures (Dkt. #9 at pp. 12–13); (3) the Arbitration Policy was presented as a policy instead of a contract and is a model of a deceptive trade practice (Dkt. #9 at pp. 6–8); and (4) there was no meeting of the minds regarding the Arbitration Policy (Dkt. #9 at pp. 10–12).

First, Plaintiff concedes the FTC's "negative option rule" applies to consumer transactions, but nonetheless, asks the Court to apply the rule here and find the implementation of Defendant's Arbitration Policy was a deceptive and unfair practice (Dkt. #9 at pp. 4–5). The Court refuses to extend the FTC's guidance to the acceptance of the Arbitration Policy as it was not a consumer transaction. Second, Plaintiff relies on the Texas Uniform Electronic Transaction Act to argue Plaintiff's electronic signature acknowledging receipt of the Arbitration Policy, Arbitration Training, and Training Guide was improper because Plaintiff was unable to store or print the electronic records (Dkt. #9 at p. 12 (citing TEX. BUS. & COM. CODE § 322.008(c) ("If a sender inhibits the ability of a recipient to store or print an electronic record, the electronic record is not enforceable against the recipient")). The Fifth Circuit has held the FAA does not impose a specific delivery requirement of arbitration agreements. *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *5 (5th Cir. May 4, 2022) (citing 9 U.S.C. §§ 2–3).

Third, assuming *arguendo* that an employer must refer to an arbitration agreement as a contract to be enforceable, Defendant does refer to the Arbitration Policy as a contract by stating, "[t]his Policy applies to and forms a mutually binding contract between [Defendant] and all of its employees," under the paragraph labeled "Scope" (Dkt. #5-1 at p. 12). Fourth, because Plaintiff received notice of the Arbitration Policy and accepted it, the Court finds the parties mutually assented to enter the agreement, and thus, Defendant established all requisite contract requirements to find the Arbitration Policy enforceable (Dkt. #1 at ¶ 19; Dkt. #9 at p. 4).

Accordingly, Defendant has shown, by a preponderance of the evidence, a valid arbitration agreement exists, and Plaintiff's religious discrimination claims against Defendant fall within the scope of that agreement.

## CONCLUSION

It is therefore **ORDERED** that Defendant Caremark, LLC's Motion to Compel Arbitration and Stay Proceedings and Brief in Support (Dkt. #5) is hereby **GRANTED**, and the parties shall proceed to arbitration.

It is further **ORDERED** this case is **STAYED** pending arbitration, and the parties must notify the Court upon completion of the arbitration to reinstate the case.

**IT IS SO ORDERED**.

**SIGNED this 6th day of October, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE